SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER LLP
Ten James Street
Florham Park, NJ 07932
(973) 301-0001
Attorneys for Defendants,
Plainfield Area Regional Sewerage Authority, Robert Villee, Frank Kunz, Cindy Lee Kuntz, Al Ellis, Robert Johnston, Carol Pizzuto, David Ervin, Herbert Lauterwald, Jr., James Koch, William Populus, William J. Thomas, John J. Eccleston, R.D. Hunter & Company, Hunter Group, CPA, Marazitti, Falcon And Healy, David J. Ruitenberg, and Brent T. Carney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CASSANDRA WILTZ, Plaintiff, vs. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY DOCKET NO.: MID-L-4986-05 |
| | CIVIL ACTION |
| MIDDLESEX COUNTY OFFICE OF THE PROSECUTOR, WILLIAM F. LAMB, GARY CHARYDCZAK, FRANK D. DININNO, BRUCE KAPLAN, MIDDLESEX BOROUGH POLICE DEPARTMENT, MICHAEL MASTROGIOVANNI, DENNIS G. DONNATELLI, MATTHEW GEIST, GREG SHARKEY, JAMES L BENSON, PLAINFIELD AREA REGIONAL SEWERAGE AUTHORITY, ROBERT VILLEE, FRANK KUNZ, CINDY LEE KUNTZ, AL ELLIS, ROBERT JOHNSTON, CAROL PIZZUTO, DAVID ERVIN, HERBERT LAUTERWALD, JR., JAMES KOCH, WILLIAM POPULUS, WILLIAM J. THOMAS, JOHN J. ECCLESTON, R.D. HUNTER & COMPANY, HUNTER GROUP, CPA, MARAZITTI, FALCON AND HEALY, DAVID J. RUITENBERG, AND BRENT T. CARNEY Defendants. | **NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** |

TO: THE CLERK AND THE HONORABLE JUDGES
OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

Defendants Plainfield Area Regional Sewerage Authority, Robert Villee, Frank Kunz, Cindy Lee Kuntz, Al Ellis, Robert Johnston, Carol Pizzuto, David Ervin, Herbert Lauterwald, Jr., James Koch, William Populus, William J. Thomas, John J. Eccleston, R.D. Hunter and Company, Hunter Group, CPA, Marazitti, Falcon and Healy, David J. Ruitenberg, and Brent T. Carney (collectively, "Defendants") hereby file the within Notice of Removal of this action from the Superior Court of New Jersey, Law Division, Middlesex County, in which it is now pending, to this Court, and in support thereof allege that:

1. On or about July 6, 2005, plaintiff, Carol Wiltz, commenced a civil action in the Superior Court of the State of New Jersey, Law Division, Middlesex County, captioned Wiltz v. Middlesex County Office of the Prosecutor, et al., by filing a Complaint with Jury Demand ("Complaint"). A copy of this Complaint is attached hereto as Exhibit A.

2. Certain Defendants, including but not limited to, David J. Ruitenberg, first became aware of the claims set forth in this law suit when they were served with a copy of the Complaint on or about July 20, 2005, via hand delivery.

3. Certain other Defendants, including but not limited to, Plainfield Area Regional Sewerage Authority, have yet to be served with the Complaint.

4. As of this date, Defendants have not filed a responsive pleading in the action commenced by plaintiff in the Superior Court of New Jersey, Law Division, Middlesex County, and no other proceedings have transpired in that action.

5. Defendants seek removal of this action pursuant to 28 U.S.C. § 1441(b) and (c) on the grounds that plaintiff's Complaint pleads a claim arising under the laws of the United States,

and under 28 U.S.C. § 1443 on the grounds that plaintiff's Complaint alleges a violation of civil rights. This Petition is filed within the time provided by 28 U.S.C. §1446 (b).

6. The United States District Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1367(a) (supplemental jurisdiction), since the state statutory and common law claims are so related to the federal claims that they form part of the same case under Article III of the United States Constitution.

7. In the Complaint, it is alleged in the First Count, ¶ 33, that: "The actions of the defendants violated the laws and Constitution of the State of New Jersey, U.S. Const. Amend. 4, U.S. Const. Amend. 14, and 42 U.S.C.A. section 1983."

8. In the Complaint, it is alleged in the Third Count, ¶ 3, that: "The actions of the defendants violated the laws and Constitution of the State of New Jersey, U.S. Const. Amend. 4, U.S. Const. Amend. 14, and 42 U.S.C.A. section 1985(2) and 1985(3)."

9. In the Complaint, it is alleged in the Fourth Count, ¶ 5, that: "The actions of the defendants violated 42 U.S.C.A. section 1986."

10. The documents annexed hereto comprise all the pleadings between the parties.

11. Simultaneously with the filing of this Notice of Removal, Defendants gave written notice to the plaintiff and will file a copy of this Notice with the Clerk of the Superior Court for Middlesex County in New Brunswick, New Jersey.

12. The Defendants reserve all defenses available to them at law, in equity or otherwise. The Defendants do not waive any defenses available to it by filing the instant Notice of Removal.

**WHEREFORE**, Defendants respectfully request that this action, now pending in the Superior Court, Law Division, Middlesex County, be removed therefrom to this Court.

Respectfully submitted,

SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER LLP

By:__________________________
STEFANI C SCHWARTZ



{00233299; 1}

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that a copy of Defendants' Notice of Filing of Notice of Removal To The United States District Court For The District Of New Jersey, Notice of Removal To United States District Court For The District Of New Jersey, and Civil Cover Sheet, were served upon the following, on August 5, 2005, via hand delivery:

Clerk of the Court
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building
and United States Courthouse
50 Walnut Street
Newark, New Jersey 07102

Clerk of the Superior Court, Middlesex County
Middlesex County Courthouse
1 JFK Square
P.O. Box 964
New Brunswick, New Jersey 08903-0964

Middlesex County Office of the Prosecutor
25 Kirkpatrick Street
New Brunswick, New Jersey 08901
Attn.: William F. Lamb
Gary Charydczak
Bruce Kaplan
Frank D. DiNinno
Defendants

Middlesex Borough Police Department
1200 Mountain Avenue
Middlesex, New Jersey 08846
Attn.: Michael Mastrogiovanni
Dennis G. Donatelli
Matthew Geist
Greg Sharkey
James L. Benson
Defendants

Additionally, a copy of Defendants' Notice of Filing of Notice of Removal To The United States District Court For The District Of New Jersey, Notice of Removal To United States

District Court For The District Of New Jersey, and Civil Cover Sheet, were served upon the following, on August 5, 2005, via overnight delivery:

Cassandra Wiltz
P.O. Box 342
Somerville, New Jersey 08876
Plaintiff Pro Se

SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER LLP
Attorneys for Defendants,
Plainfield Area Regional Sewerage Authority, Robert Villee, Frank Kunz, Cindy Lee Kuntz, Al Ellis, Robert Johnston, Carol Pizzuto, David Ervin, Herbert Lauterwald, Jr., James Koch, William Populus, William J. Thomas, John J. Eccleston, R.D. Hunter & Company, Hunter Group, CPA, Marazitti, Falcon and Healy, David J. Ruitenberg, and Brent T. Carney

By:__________________________
STEFANI C SCHWARTZ

Dated: August 5, 2005

EXHIBIT A

CASSANDRA WILTZ, Pro Se
P.O. Box 342
Somerville, New Jersey 08876
(908) 392-2270

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
MIDDLESEX COUNTY

DOCKET NO ____________________

CASSANDRA WILTZ

Plaintiff,

vs.

Middlesex County Office of the Prosecutor,
William F. Lamb,
Gary Charydczak,
Frank D. DiNinno,
Bruce Kaplan,
Middlesex Borough Police Department,
Michael Mastogiovanni,
Dennis G. Donnatelli,
Matthew Geist,
Greg Sharkey,
James L. Benson,
Plainfield Area Regional Sewerage Authority,
Robert Villee,
Frank Kunz,
Cindy Lee Kuntz,
Al Ellis,
Robert Johnston,
Carol Pizzuto,
David Ervin,
Herbert Lauterwald, Jr.,
James Koch,
William Populus,
William J. Thomas,
John J. Eccleston,
R. D. Hunter and Company,
Hunter Group, CPA,
Maraziti, Falcon, and Healey,
David J. Ruitenberg,
and Brent T. Carney,

Defendants.

CIVIL ACTION

COMPLAINT AND JURY DEMAND

RECEIVED & FILED
2005 JUL -6 P 4:22
MIDDLESEX VICINAGE
FINANCE DIVISION

Plaintiff Cassandra Wiltz, by way of Complaint against the defendants, says:

FIRST COUNT

1. Plaintiff Cassandra Wiltz ("Wiltz") resides in the Borough of Raritan, County of Somerset, and State of New Jersey and has a mailing address of P.O. Box 342, Somerville, New Jersey 08876.

2. Middlesex County is a political subdivision of the State of New Jersey. Defendant Middlesex County Prosecutor's Office is a public agency charged with prosecuting violations of New Jersey's criminal statutes occurring within the geographic confines of Middlesex County. Its office is located at 25 Kirkpatrick Street, New Brunswick, New Jersey 08901.

3. Defendant William F. Lamb ("Lamb") was, at all times relevant to this complaint, an Assistant Prosecutor in the Middlesex County Office of the Prosecutor. He is being charged in his individual capacity and his official capacity as Assistant Prosecutor for the Middlesex County Office of the Prosecutor, which does business at 25 Kirkpatrick Street, New Brunswick, New Jersey 08901. His place of residence is unknown.

4. Defendant Gary Charydczak ("Charydczak") was, at all times relevant to this complaint, an investigator for the Middlesex Office of the Prosecutor. He is being charged in his individual capacity and his official capacity as Investigator for the Middlesex County Office of the Prosecutor, which does business at 25 Kirkpatrick Street, New Brunswick, New Jersey 08901. His place of residence is unknown.

5. Defendant Bruce Kaplan ("Kaplan") was, at all times relevant to this complaint, the Prosecutor for the Middlesex County Office of the Prosecutor, which does business at 25 Kirkpatrick Street,

New Brunswick, New Jersey 08901. He is being charged in his individual capacity and his official capacity as Prosecutor. His place of residence is unknown.

6. Defendant Frank D. DiNinno ("DiNinno") was, at all times relevant to this complaint, an investigator for the Middlesex Office of the Prosecutor. He is being charged in his individual capacity and his official capacity as Investigator for the Middlesex County Office of the Prosecutor, which does business at 25 Kirkpatrick Street, New Brunswick, New Jersey 08901. His place of residence is unknown.

7. Defendant Middlesex Borough Police Department is a municipal police department, located at 1200 Mountain Avenue, Middlesex, New Jersey 08846.

8. Defendant Michael Mastrogiovanni ("Mastrogiovanni") was, at all times relevant to this complaint, an Officer and Patrolman for the Middlesex Borough Police Department, which does business at 1200 Mountain Avenue, Middlesex, New Jersey 08846. He is being charged in his individual capacity and his official capacity as Officer/Patrolman. His place of residence is unknown.

9. Defendant Dennis G. Donatelli ("Donnatelli") was, at all times relevant to this complaint, a Detective Sergeant for the Middlesex Borough Police Department, which does business at 1200 Mountain Avenue, Middlesex, New Jersey 08846. He is being charged in his individual capacity and his official capacity as Detective Sergeant. His place of residence is unknown.

10. Defendant Matthew Geist ("Geist") was, at all times relevant to this complaint, a Detective for the Middlesex Borough Police

Department, which does business at 1200 Mountain Avenue, Middlesex, New Jersey 08846. He is being charged in his individual capacity and his official capacity as Detective. His place of residence is unknown.

11. Defendant Greg Sharkey ("Sharkey") was, at all times relevant to this complaint, a Captain for the Middlesex Borough Police Department, which does business at 1200 Mountain Avenue, Middlesex, New Jersey 08846. He is being charged in his individual capacity and his official capacity as Captain. His place of residence is unknown.

12. Defendant James L. Benson ("Benson") was, at all times relevant to this complaint, the Chief of Police for the Middlesex Borough Police Department, which does business at 1200 Mountain Avenue, Middlesex, New Jersey 08846. He is being charged in his individual capacity and his official capacity as Chief of Police. His place of residence is unknown.

13. Defendant Plainfield Area Regional Sewerage Authority ("PARSA") is a politic public body, constituting a political subdivision of the State of New Jersey. It serves nine New Jersey municipalities, through a series of service contracts. PARSA is governed by a Board of Commissioners (collectively referred to in this complaint as "PARSA Board members"), which maintains supervisory control over all staff and which makes and enforces its policies/procedures/customs. Its offices are located at 200 Clay Avenue, Middlesex, New Jersey 08846.

14. Defendant Robert Villee ("Villee") was last known to reside at 64 Lake Avenue, Fairhaven, New Jersey 07704. He is being sued

in his individual capacity and his official capacity as the Executive Director of PARSA.

15. Defendant Frank Kunz ("F. Kunz") was last known to reside at 1983 Amwell Road, Somerset, New Jersey 08873. He is being sued in his individual capacity and his official capacity as PARSA's Assistant Operations Manager.

16. Defendant Cindy Lee Kuntz ("C. L. Kuntz") was last known to reside at 300 Valley Scent Avenue, Scotch Plains, New Jersey 07076. She is being sued in her individual capacity and her official capacity as PARSA's Administrative Assistant.

17. Defendant Al Ellis ("Ellis") is a member of PARSA's Board of Commissioners, was last known to reside at 720 Valley Road, Watchung, New Jersey 07060, and is being sued in his individual capacity and his official capacity as a PARSA Board member.

18. Defendant Robert Johnston ("Johnston") is a member of PARSA's Board of Commissioners, was last known to reside at 421 Evergreen Blvd., Scotch Plains, New Jersey 07060, and is being sued in his individual capacity and his official capacity as a PARSA Board member.

19. Defendant Carol Pizzuto ("Pizzuto") is a member of PARSA's Board of Commissioners, was last known to reside at 716 Dunellen Avenue, Dunellen, New Jersey 08812, and is being sued in her individual capacity and her official capacity as a PARSA Board member.

20. Defendant David Ervin ("Ervin") is a member of PARSA's Board of Commissioners, was last known to reside at 1461 E. 7th Street, Plainfield, New Jersey 07062, and is being sued in his individual

capacity and his official capacity as a PARSA Board member.

21. Defendant Herbert Lauterwald, Jr. ("Lauterwald") is a member of PARSA's Board of Commissioners, was last known to reside at 157 Westervelt Avenue, North Plainfield, New Jersey 07060, and is being sued in his individual capacity and his official capacity as a PARSA Board member.

22. Defendant James Koch ("Koch") is a member of PARSA's Board of Commissioners, was last known to reside at 14 Wimpole Way, Greenbrook, New Jersey 08812, and is being sued in his individual capacity and his official capacity as a PARSA Board member.

23. Defendant William Populous ("Populous") is a member of PARSA's Board of Commissioners, was last known to reside at 384 LaGrande Avenue, Fanwood, New Jersey 07023, and is being sued in his individual capacity and his official capacity as a PARSA Board member.

24. Defendant William J. Thomas ("Thomas") is a member of PARSA's Board of Commissioners, was last known to reside at 130 Lowden Avenue, South Plainfield, New Jersey 07080, and is being sued in his individual capacity and his official capacity as a PARSA Board member.

25. Any reference in this complaint to "PARSA Board members" is a reference to defendants Ellis, Johnston, Pizzuto, Ervin, Lauterwald, Koch, Populous, and Thomas.

26. Defendant John J. Eccleston ("Eccleston") was, at all times relevant to this complaint, an agent/partner/member of the audit/accounting firm of R. D. Hunter and Company, 17-17 Route 208, Fair Lawn, New Jersey 07410. The current successor to R. D.

Hunter and Company is Hunter Group, CPA. Defendant Eccleston is being charged in his individual capacity and in his official capacity as an agent/partner/member of R. D. Hunter and Company/Hunter Group. He was last known to reside at 32 Devereux Drive, Manchester Township, NJ 08759.

27. Defendant R. D. Hunter and Company ("R.D. Hunter") was an audit/accounting firm, which did business at 17-17 Route 208, Fair Lawn, New Jersey 07410. On or around 1/1/03 it began doing business, at the same address, using the name of Hunter Group, CPA.

28. Defendant Hunter Group, CPA ("Hunter Group") is a audit/accounting firm, which does business at 17-17 Route 208, Fair Lawn, New Jersey 07410.

29. Defendant Maraziti, Falcon, and Healey ("Maraziti") is a law firm, which does business at 150 John F. Kennedy Parkway, Short Hills, New Jersey 07078.

30. Defendant David J. Ruitenberg ("Ruitenberg") was, at all times relevant to this complaint, a member of the bar of the State of New Jersey and an attorney/member/partner of the law firm of Maraziti, Falcon, and Healey, which does business at 150 John F. Kennedy Parkway, Short Hills, New Jersey 07078. He is being charged in his individual capacity and in his official capacity as PARSA's legal counsel and Marazati, Falcon, and Healey's agent. He was last known to reside at 19 Bonnieview Terrace, Ramsey, New Jersey 07446.

31. Defendant Brent T. Carney ("Carney") was, at all times relevant to this complaint, a member of the bar of the State of

New Jersey and an attorney/member of the law firm of Maraziti, Falcon, and Healey, which does business at 150 John F. Kennedy Parkway, Short Hills, New Jersey 07078. He is being charged in his individual capacity and in his official capacity as PARSA's legal counsel and Marazati, Falcon, and Healey's agent. His place of residence is unknown.

32. Under color of law, defendants Middlesex County Office of the Prosecutor, Lamb, Charydczak, Kaplan, DiNinno, Middlesex Borough Police Department, Mastrogiovanni, Donatelli, Geist, Sharkey, Benson, PARSA, Villee, F. Kunz, C. L. Kuntz, PARSA Board members, Eccleston, R.D. Hunter/Hunter Group, Maraziti, Ruitenberg, and Carney acted individually and in a conspiratorial manner to subject the plaintiff to malicious prosecution, to maliciously abuse the legal proceedings, to deny the plaintiff due process in other ways, and to maliciously deny the plaintiff her position of employment and interfere with her ability to earn a living. The actions of the defendants resulted in the plaintiff's unreasonable seizure/arrest and her loss of liberty, property, and right to equal protection of the laws.

33. The actions of the defendants violated the laws and Constitution of the State of New Jersey, U.S. Const.Amend. 4, U. S. Const.Amend. 14, and 42 U.S.C.A. section 1983.

34. In 9/97, Plaintiff Wiltz was appointed by PARSA Board members as PARSA's part-time Treasurer and financial officer. The term of her initial appointment ended in 2/98 and she was re-appointed (for one year terms) in 2/98 and 2/99.

35. Plaintiff Wiltz is African American and a member of a

protected class.

36. At 9/97 Plaintiff Wiltz was a Certified Public Accountant (CPA), had held her CPA license since 1981, and had worked in the accounting and finance profession since 1978.

37. Plaintiff Wiltz's job duties were to prepare monthly financial statements for PARSA's Board of Commissioners and to perform all of PARSA's other accounting and financial functions.

38. After the monthly financial statements were prepared by Plaintiff Wiltz, copies were distributed to many people who did not work on PARSA's premises, including to each of PARSA's Board members and to defendants Hunter Group and Eccleston.

39. To enter and exit PARSA's Middlesex facilities, every employee had keys and a building access code. The code identified the person who was entering or exiting the premises. The security system was provided by and monitored by A. A. Audio Systems, which maintained details about the usage of the access codes.

40. Between 9/97 and 11/99, PARSA Board members constantly praised Plaintiff Wiltz's job performance.

41. Between 9/97 and 11/99, Caucasian defendant Villee repeatedly instigated negative confrontations with Plaintiff Wiltz, about many issues. In every instance, he made clear his racial animosity.

42. On or around 9/24/99, Caucasion defendant C. L. Kuntz (who was a friend of defendant Johnston) was hired by defendant Villee as the Administrative Assistant who reported directly to him. Defendant C. L. Kuntz's job duties were solely to perform all of PARSA's administrative and secretarial office functions.

43. Upon being hired, defendant C. L. Kuntz did not have either the skills, education, or work experience to allow her to perform Plaintiff Wiltz's Treasurer duties.

44. As was consistent with the timely performance of her job duties, by 11/1/99, Plaintiff Wiltz had prepared PARSA's financial statements up to the period ending 9/30/99.

45. On or around 11/4/99, defendant Villee re-assigned Plaintiff's Wiltz's accounting and financial duties to defendant C. L. Kuntz (in the plaintiff's absence) and engaged outside auditors/accountants to train defendant C. L. Kuntz regarding the understanding of the fundamentals of accounting.

46. On or around 11/5/99, defendant Villee and PARSA Board members gave defendant C. L. Kuntz a substantial raise, despite the fact that they had failed and refused to give the plaintiff a raise during her 2-year tenure.

47. On 11/7/99 defendant Villee contacted Middlesex Borough Police Department and defendant Mastrogiovanni was dispatched to PARSA's premises. Defendant Villee falsely told defendant Mastrogiovanni that Plaintiff Wiltz was a former employee (because she had allegedly implied to him on 11/1/99 that she was resigning her position), that he believed that she had used her own keys and an access code to come onto PARSA's premises on 11/7/99, and that the plaintiff had given the implied resignation after instigating a negative confrontation with defendant C. L. Kuntz. Defendant Villee also falsely told defendant Mastrogiovanni that several computer files, including MYOB6.0 financial statement files (that were allegedly used by Plaintiff

Wiltz to produce financial statements), had been accessed and emptied of their up-to-date contents and that the destroyed/erased data represented all of PARSA's 1999 financial statements and records.

48. Immediately prior to 11/7/99, PARSA and Plaintiff Wiltz did not utilize MYOB6.0 and such computer files did not exist that contained up-to-date financial information.

49. On 11/7/9 defendant Villee told defendant Mastrogiovanni that, although he did not witness the plaintiff on PARSA premises on 11/7/99, defendant F. Kunz was an employee who had allegedly seen the plaintiff on the premises earlier in the day (and who had left the premises, after his alleged observation).

50. On 11/7/99 defendant Villee showed defendant Mastogiovanni some items of his personal property that were lying on the floor and stated that they appeared to be 'a little disturbed' (and that they were not where he had left them).

51. On 11/7/99, defendant Villee told defendant Mastrogiavanni that Plaintiff Wiltz's personnel file was the sole thing that was allegedly missing from the premises. He also stated that the fact that the personnel file was not in an unlocked file cabinet drawer that it was allegedly usually maintained in was sufficient reason to conclude that the plaintiff had stolen it.

52. On 11/7/99, defendant Villee led defendant Mastrogiovanni to one of several computers that were maintained on PARSA's premises and stated that the computer files that had allegedly been emptied of their contents by Plaintiff Wiltz (and their back-up files) had been exclusively maintained on this computer. At that

point, defendant Mastrogiovanni examined the screen of the computer and noted that it indicated that the specific files that defendant Villee told him had been accessed and emptied of their contents on 11/7/99 had actually last been accessed on 10/25/99. Defendant Mastrogiovanni obtained a computer printout and marked it as evidence, to prove what he had seen on the screen.

53. On 11/7/99, defendants Villee and Mastrogiovanni reach a mutual agreement/understanding that defendant Mastrogiovani would only look at the computers that defendant Villee suggested/recommended that the police officer look at.

54. On 11/7/99 defendant Mastogiovanni instructed defendant Villee not to use the computer that contained the files that allegedly had been accessed and emptied of their contents, but left the computer in defendant Villee's possession.

55. To encourage other defendants to file criminal charges against the plaintiff, on 11/7/99 defendant F. Kunz falsely told defendant Mastrogiavanni (during a telephone conversation) that he saw the plaintiff leave PARSA's premises on 11/7/99 with a gym bag that appeared to be full and that he did not know what the contents of the bag were or who the bag belonged to. Defendant F. Kunz also deliberately kept hidden from the police officer his knowledge that defendant C. L. Kuntz was on PARSA's premises on 11/7/99.

56. During the 11/7/99 telephone conversation, defendant F. Kuntz told defendant Mastrogiovanni that he did not see the plaintiff touch any PARSA property, during the time that he allegedly saw her on the premises.

57. On 11/8/99, defendant C. L. Kuntz reported to defendant Villee that she had performed a complete inventory on 11/8/99 and discovered that items missing from PARSA allegedly consisted of all original bank statements and 4 binders that had allegedly been full of bank reconciliations and other paperwork that had been generated by the plaintiff (to do her own work).

58. On 11/8/99, defendant Villee told defendants Geist and Donnatelli that items missing from PARSA consisted of the paperwork that defendant C. L. Kuntz told him that she had discovered to be missing and the personnel file of Plaintiff Wiltz (that he had allegedly discovered to be missing on 11/7/99).

59. Defendant Villee had shown defendant Mastrogiovanni a memo (that he wrote) on 11/7/99, which stated that it was actually a week prior to 11/7/99 that bank statements appeared to be missing.

60. On 11/8/99 defendant Villee advised defendants Geist and Donnatelli that (based upon the results of his own investigation), if they went to a dumpster in the back of the Middlesex Borough Police Department, they would likely find torn bank statements that belonged to the PARSA.

61. On 11/8/99, defendants Geist and Donnatelli accompanied defendant Villee to a dumpster in the back of the Middlesex Borough Police Department and recovered from the dumpster a garbage bag of torn paper, that defendant Villee said was torn paperwork of PARSA.

62. On 11/8/99, Defendants Geist and Donnatelli did not see a

gym bag in the dumpster that defendant Villee led them to (or in any other dumpster).

63. In furtherance of the conspiracy, on 11/8/99 defendants Geist and Donnatelli took a photograph of the garbage bag (but did not take an inventory of its contents) and then gave the bag and its contents to defendant Villee, for the purpose of allowing him to alter the bag's contents (before it was marked as evidence).

64. The defendant police officers deliberately and willfully neglected to follow the Middlesex Borough and Middlesex Borough Police Department policies/procedures/rules/regulations regarding how to search for, collect, identify, and preserve evidence in a criminal investigation.

65. Around 11/9/99, defendant Villee falsely communicated to Board members that the plaintiff had engaged in a negative confrontation with defendant C. L. Kuntz, resigned her position (for an unknown reason), and subsequently stole/destroyed accounting records. Defendant Villee's claims were false and his representations to Board members were unknown to the plaintiff. In furtherance of the conspiracy, PARSA Board members responded to defendant Ville's claims by directing him, on or around 11/9/99, to sign a criminal complaint against Plaintiff Wiltz for burglary and computer theft.

66. Prior to 11/99 PARSA had a policy/custom that provided that, when it was alleged that someone who reported to the Board resigned, efforts were made by Board members to confirm (via certified mail, verbal contact, and/or other means) the accuracy

of the claim, to determine the reason for the resignation, and to obtain a written letter of resignation. Prior to 11/99, the policy/custom was strictly adhered to, particularly when defendant Villee claimed that a previous Caucasian Treasurer/accountant had resigned his position (also for an allegedly unknown reason). Because of Plaintiff Wiltz's race, policy/custom was changed in 11/99 and no Board member attempted to make contact with the plaintiff. Prior to 11/99, PARSA had a policy that prescribed the specific actions to be taken, when it was alleged that there was conflict between employees or that an employee had a complaint. Because of the plaintiff's race, PARSA Board members adopted a new policy in 11/99 and made no attempt to insure that the previously established procedures were applied to the plaintiff's situation or that defendant Villee was being truthful about an alleged conflict between the plaintiff and defendant C. L. Kuntz. In the 3-year period between 1996 and 1999, defendant Villee represented to the Board members that Treasurers/accountants took PARSA's bank statements and accounting records from the premises and would not return them. Because of her race, the plaintiff was the sole person that the Board members instructed defendant Villee to sign a criminal complaint against.

67. PARSA denied the plaintiff procedural due process and maintained racially discriminatory policies, in that its policy-making Board members established policies/customs/procedures and (then) provided additional directives that the plaintiff was to be treated as the exception to those policies/customs/procedures

(because of her race).

68. PARSA maintained and utilized one set of policies/customs/procedures for Caucasian employees and a different set of policies/customs/procedures for African American employees.

69. Defendant PARSA Board members had no probable cause to direct defendant Villee to sign a criminal complaint against the plaintiff and also had sufficient reason to doubt the veracity of representations made by someone who had a history of making unfounded complaints about removals of PARSA property from the premises.

70. Defendants PARSA and PARSA Board members acted negligently, in directing defendant Villee to sign a criminal complaint against the plaintiff.

71. Defendants Maraziti, Ruitenberg, and Carney were aware of PARSA's policies and past history and acted negligently, in failing to advise PARSA and its Board members (while encouraging them to prosecute the plaintiff) to consistently apply its policies/procedures.

72. Defendant Villee knew that he had no probable cause to sign a criminal complaint against the plaintiff, since he fabricated the facts upon which the complaint was made.

73. In furtherance of the conspiracy, between 11/8/99 and 11/10/99, defendants Villee and C. L. Kuntz removed the torn papers from the garbage bag that had been recovered from a dumpster by defendants Geist and Donnatelli and altered the bag's contents.

74. In furtherance of the conspiracy, on 11/10/99 defendant Villee gave to defendant Mastrogiavanni an un-bagged "pile" of paper, which he represented as being the contents of the garbage bag that had been seen in a dumpster on 11/8/99 by defendants Geist and Donnatelli.

75. After consultation with defendants Geist and Donnatelli (and in furtherance of the conspiracy), on 11/10/99 defendant Mastrogiovanni agreed to accept from defendant Villee a pile that contained paper that no reasonable person would have believed had a legitimate business use, torn and untorn paperwork that had not been reported as missing on 11/8/99, and untorn paper with handwritten alterations of defendant C. L. Kuntz. The pile of paper did not include any of PARSA's original bank statements (either torn or untorn) or the plaintiff's personnel file.

76. Any reasonable person would have concluded that the paperwork with the handwritten alterations of defendant C. L. Kuntz had been prepared by defendant C. L. Kuntz for the sole purpose of providing to police officers on 11/8/99 (and could not have been evidence of an 11/7/99 theft by the plaintiff).

77. Although he was aware that evidence had been tampered with and that defendants Geist and Donnatelli had only seen torn paper in a dumpster, on 11/10/99 defendant Mastrogiovanni did not charge anyone with tampering with evidence or attempt to determine how the pile of paper came to be in defendant Villee's possession. In furtherance of the conspiracy, on 11/10/99 he merely marked the pile of paper as evidence, to be used against the plaintiff (during a trial).

78. In furtherance of the conspiracy, on or around 11/10/99 defendant Mastogiovani prepared a report that falsely identified the pile of paper that defendant Villee gave to him as torn bank and accounting documents, solely because that is how he and defendant Villee agreed that it would be described. He also made the knowingly false claim in his report that the pile of paper had been recovered from Middlesex's Mountain View Park, which was located directly in front of PARSA, and was recovered by a Middlesex Parks Department employee (who was allegedly its 'finder/possessor').

79. On at least one occasion between 11/7/99 and 11/10/99, defendants Villee and F. Kunz engaged in private discussions about a gym bag.

80. On 11/10/99, defendant Villee stated that he now wished to advise defendant Mastrogiovanni that the personal items that he had previously described as being 'disturbed' had actually been maintained in his personal Polo Sport gym bag, that he had noticed on 11/7/99 that the Polo Sport gym bag had been stolen, and that he currently had the Polo Sport gym bag in his possession. Defendant Mastrogiavanni obtained from defendant Villee an empty Polo Sport gym bag and marked it as evidence, without obtaining an explanation of where, when, or how it had come into the possession of defendant Villee. In furtherance of the conspiracy, he also made the knowingly false claim in his police report that the Polo Sport gym bag that defendant Villee gave him had been recovered from Middlesex's Mountain View Park and was recovered by a Middlesex Parks Department employee (who

was allegedly its 'finder/possessor').

81. To encourage other defendants to prosecute the plaintiff (and in furtherance of the conspiracy), on 11/10/99 defendant C. L. Kuntz falsely told defendant Mastrogiovanni that that auditors had once discovered (during an audit) that her personnel file was missing, that she speculated that it was the plaintiff who had allegedly stolen her personnel file (before 11/4/99), and that she believed that the plaintiff had stolen 'cookies' from her.

82. On 11/10/99, defendant C. L. Kuntz withheld from defendant Mastogiovani the fact that she had been on PARSA's premises on 11/7/99. Defendant Mastrogiovanni also did not attempt to identify employees who had been on the premises on or around 11/7/99.

83. In furtherance of the conspiracy, on 11/15/00 R. Villee provided defendant Mastrogiavanni with a 33-page un-torn (and perfectly intact) Detailed General Ledger Trial Balance (computer report). The document had an attached note (which was prepared by defendant Villee) that advised the police that Plaintiff Wiltz had no legitimate reason, during the course of her employment, to have ever seen or touched the 33-page report. Despite the fact that defendant Mastrogiovanni was aware that defendants Geist and Dionatelli did not see a 33-page report in a dumpster, he made no effort to determine where, when, or by whom the 33-page document was found or how it came to be in the possession of defendant Villee. He merely marked the report as evidence (to be used against Plaintiff Wiltz, during a trial), without performing any type of investigation concerning it.

84. On 11/15/99 defendants Mastrogiavanni, Donatelli, and Sharkey visited PARSA's premises and were all present when defendant Charydczak examined (only) the computer that R. Villee had been told not to use on 11/7/99. Each defendant noted that the computer screen showed that the files that defendant Villee stated had been accessed and emptied of its contents of 11/7/99 had actually last been accessed on 10/25/99. After the review of the computer, defendant Mastrogiovanni took possession of the computer's tower and placed it in evidence.

85. Even though the law enforcement officers and investigators knew that Caucasian defendant Villee had made a false report about a 11/7/99 computer theft, they did not perform their known duty of appropriately charging defendant Villee with the commission of a crime.

86. When African Americans (and other minorities) made false police reports and/or gave false information and evidence to officers, the defendant officers appropriately charged them with the commissions of crimes.

87. On 11/15/99 defendant Mastrogiavanni arrested Plaintiff Wiltz for 11/7/99 computer theft (ie: accessing a computer file and emptying it of its data contents) and burglary, in violation of N.J.S.A. 2C:20-25a and N.J.S.A. 2C:18-2.

88. To maliciously insure that the plaintiff would not be able to adequately defend herself against the computer theft charge, defendants Charydczak and Benson would not provide the plaintiff with documentation of defendant Charydczak's 11/15/99 review of the computer, despite her repeated requests throughout the period

of her prosecution.

89. Around 11/15/99 Plaintiff Wiltz learned, via gossip that defendant Villee was circulating throughout the business community, that there was an existing warrant for her arrest. When she attempted to reach various PARSA's Board members to obtain an explanation for the warrant, no one (including then Board Chairman defendant Ellis) would respond to her.

90. Other than to note that a computer screen showed that the files that defendant Villee had claimed were accessed on 11/7/99 had actually last been accessed on 10/25/99, neither defendant Mastrogiavanni nor any other representative of the Middlesex Police Department or the Middlesex County Office of the Prosecutor performed an investigation, of any type. No officer/investigator ever even took a single fingerprint, spoke to Plaintiff Wiltz, obtained a warrant to perform a search to determine if the plaintiff had possession of the personnel file that allegedly had been stolen, ascertained who had actually used an access code to enter PARSA premises on 11/7/99, or examined any of the other computers that were maintained on PARSA's premises. Because they were making criminal charges against an African American person, the officers/investigators did (however) speak to Caucasian defendants Villee, F. Kunz, and C. L. Kuntz.

91. The defendant law enforcement officers, investigators, and prosecutors had a legal duty to the plaintiff (and to the general public) to conduct criminal investigations and prosecutions without negligence, impartially, in good faith, and while acting in accordance with the law and to insure that subordinates

adhered to the same standards of conduct.

92. The Borough of Middlesex and the Middlesex County Office of the Prosecutor had established ordinances/rules/procedures for criminal investigations. The ordinances/rules/procedures were not followed for the prosecution of the plaintiff (in a further denial of her due-process rights), since no investigation was performed.

93. Thorough and complete investigations were undertaken by the defendants, when Caucasians were identified as crime suspects.

94. Defendant Benson was responsible for developing rules/policies/procedures for the day-to-day operations of the Middlesex Borough Police Department, prescribing to police officers their duties/responsibilities/assignments, insuring compliance with rules/policies/procedures, reviewing reports (where officers described the procedures that had been performed), and otherwise supervising police officers.

95. Defendant Benson neglected to provide proper training and supervision to his subordinates or to make known to them, in any other way, their responsibilities to conduct thorough and complete criminal investigations. He also negligently failed to assign to anyone in the police department the specific task of conducting a criminal investigation, for the charges against the plaintiff. Defendants Mastrogiovanni, Geist, Donnatelli, and Sharkey were also acting under the direct supervision of defendant Benson and on the basis of a practice/custom (which had the effect of policy) that had been established for the Middlesex Borough Police Department by defendant Benson, which allowed

police officers to arbitrarily determine if criminal investigations would be performed. As a direct result of this practice/custom/policy, it was negligently decided that no investigation would be undertaken of the charges against the plaintiff.

96. The defendants had reason to know the extreme risk that constitutional violations could result from failure to conduct criminal investigations, but were deliberately indifferent to that risk.

97. Defendant Benson was, at all times, aware that an investigation had not been performed for the charges against the plaintiff, and failed to take any appropriate action in response to his knowledge.

98. Defendant Mastrogiovanni was not acting on the basis of a good faith belief that crimes had occurred, when he arrested the plaintiff.

99. There was no probable cause for the plaintiff's 11/15/99 arrest for computer theft and the defendant law enforcement officers and investigators had even witnessed a computer review that proved that such a theft did not take place on 11/7/99.

100. There was no reasonable or probable cause for the plaintiff's 11/15/99 arrest for burglary. A charge of burglary also requires that there be an intent to enter the premises for the purpose of committing another unlawful act. The defendants knew that evidence proved that the alleged other unlawful act (of computer theft) did not occur on 11/7/99.

101. On 11/16/99, defendant Mastrogiavanni signed a complaint

against Plaintiff Wiltz for the 11/7/99 theft of a gym bag, a personnel file, bank statements, financial records, and a 33-page Detailed General Ledger Trial Balance (computer report).

102. Based upon the information that was available for defendant Mastrogiovanni on 11/16/99, there was no reasonable or probable cause for the complaint that the officer signed.

103. Defendants Donnatelli, Geist, Sharkey, and Charydczak coordinated all known facts with defendant Mastrogiovanni and then maliciously urged and encouraged him to arrest the plaintiff and to sign a theft complaint against her, with knowledge that there was no reasonable or probable cause for such actions against the plaintiff.

104. In furtherance of the conspiracy, on or around 11/15/99 and 11/16/99 defendant Mastrogiovanni wrote arrest and investigation reports that made the knowingly false claims that PARSA had made an 11/7/99 report about the theft of a gym bag, a personnel file, bank statements, financial records, and a 33-page Detailed General Ledger Trial Balance and that the Middlesex Borough Police Department had conducted an investigation of the charges against the plaintiff.

105. Prior to 12/99, PARSA had a policy/custom of evaluating all employees (except for the African American plaintiff) for raises/promotions on a routine basis and all at the same time. On 12/1/99, defendants Villee and the PARSA Board members ignored policy/custom and selected defendant F. Kunz to be the sole employee to receive a raise/promotion.

106. PARSA had policies/practices/procedures regarding how to

search for/fill a vacant position with an individual who had the qualifications, skills, and experience for the position and regarding circumstances under which PARSA would pay for an employee's education. In 11/99, PARSA Board members (encouraged and urged by defendants R. D. Hunter, Hunter Group, and Eccleston) did not adhere to policies/practices/procedures.

107. In furtherance of the conspiracy, in 11/99 defendant C. L. Kuntz was assigned by defendants Villee and PARSA's Board members the task of preparing financial statements for the period ending 10/31/99. To perform her task, defendant C. L. Kuntz went to the computer that truly contained the accounting program that was used by PARSA, printed from the computer Plaintiff Wiltz's financial statements for the period ending 9/30/99, prepared journal entries that solely represented defendant C. L. Kuntz's version of PARSA's 10/99 financial activity, and added the journal entries to the 9/30/99 financial statement balances.

108. In 11/99 and 12/99, auditor/accountant Bernard Mensah (who worked for defendants R. D. Hunter, Hunter Group and Eccleston) assisted defendant C. L. Kuntz, in preparing the journal entries for the 10/99 financial activity.

109. The financial statements that were prepared by defendant C. L. Kuntz, with the assistance of B. Mensah, were not consistent with Generally Accepted Accounting Principles.

110. Defendants R.D. Hunter, Hunter Group, and Eccleston negligently failed to supervise and review the work of employee B. Mensah.

111. Throughout the end of 1999 and the beginning of 2000, the

plaintiff advised PARSA Board members (via communication with defendant Ervin) that she wanted to meet with them, to resolve the issues of her prosecution and the unlawful (race motivated) removal of her from her position. Defendant Ervin advised the plaintiff that his fellow board members refused to enter into any communications with the plaintiff.

112. As a result of having the plaintiff arrested, re-assigning her duties to defendant C. L. Kuntz, and failing and refusing to communicate with her, the defendants' denied the plaintiff her position as PARSA's Treasurer. The denial was unlawful, in that the plaintiff was performing at the level that was reasonably expected by her employer and her duties were subsequently given a less qualified Caucasian. Since the one-year term of the plaintiff's appointment did not end until 2/00 and the plaintiff was not subject to removal from her position prior to the term's expiration, her contract with PARSA was also violated by the defendants.

113. Although the defendants justified their actions (in denying the plaintiff her position of employment) by adopting a claim that the plaintiff had provided a resignation to defendant Villee, that claim was not adopted in good faith. PARSA policy/custom required that her resignation be in writing, the plaintiff did not provide a written resignation, defendant Villee did not have the authority to accept a resignation (that could only be accepted by the Board that appointed the plaintiff), and the Board members did not blindly accept such a representation when defendant Villee claimed that the previous Caucasian

Treasurer/accountant had resigned.

114. The plaintiff was removed from her position, without affording her the due-process right to be 'heard', regarding the claim that she had resigned.

115. In furtherance of the conspiracy, around 12/28/99 defendants R. D. Hunter, Hunter Group, and Eccleston prepared (for defendant Villee to present to a prosecutor, to present to a Grand Jury, and to circulate throughout the business community) an invoice for over $5,000 of services performed, which intentionally falsely stated that services consisted of audit work and "reestablishment of a general ledger and accounting documents...required as a result of the former accountant/Treasurer".

116. In furtherance of the conspiracy, PARSA Board members approved the 12/28 invoice from defendants R. D. Hunter, Hunter Group, and Eccleston for payment, despite knowledge that there was no need to "re-establish a general ledger". The 9/30/99 financial statements had been printed by defendant C. L. Kuntz in 11/99 (and where used as a basis for her 10/31/99 financial statements) and each defendant had in his/her personal possession a copy of 9/30/99 financial statements that had been received in the mail (when the plaintiff prepared it). Each Board member and defendant Eccleston also were aware that not a single piece of paper was presented to PARSA's staff or Board (or existed), as evidence of a supposed "reconstruction" of an accounting document.

117. As was known to defendants Eccleston and PARSA Board

members, a financial statement can only be printed from a computer program, if the general ledger is contained in the computer.

118. Around 1/5/00, based upon the encouragement and urgings of defendants R. D. Hunter, Hunter Group, Eccleston, C. L. Kuntz, and PARSA Board members, defendant Villee presented the invoice of defendants R. D. Hunter, Hunter Group, and Eccleston to the Office of the Prosecutor. He also falsely represented that it was only a part of what had already been incurred for 'reconstruction' services (provided by auditors/accountants, consultants, himself, and defendant C. L. Kuntz), which were necessary because Plaintiff Wiltz had destroyed all 1999 computer and printed financial statements and records.

119. In furtherance of the conspiracy, on 1/5/00 defendants Villee, F. Kunz, Mastrogiavanni, and Donatelli testified before a Grand Jury of the State of New Jersey (for the County of Middlesex). As a result of the testimonies, Plaintiff Wiltz was indicted for third degree burglary and third degree computer theft.

120. There was no probable cause for the indictments and they were obtained with malicious intent, since they were obtained on the basis of willful and intentional false testimony to the Grand Jury and willful and intentional hiding/concealing evidence from the Grand Jury.

121. On 1/5/00 defendant Lamb induced testimony from defendants Villee, Mastrogiovanni, and Donatelli, with direct examination questions that were designed to keep facts (that were known to

defendant Lamb) hidden from the Grand Jurors and that intentionally encouraged knowingly false testimony.

122. On 1/5/99,defendant Lamb denied the plaintiff due process, by inducing defendant Villee to give testimony that the plaintiff's personnel file had been stolen and was never found/recovered, despite his own knowledge that the file was actually in the possession of the Office of the Prosecutor.

123. On 1/5/00, defendant Lamb denied the plaintiff due process, by knowingly concealing from the Grand Jury other facts and evidence that was exculpatory and favorable to the plaintiff. Defendants Sharkey, Charydczak, Mastrogiovanni, and Lamb maliciously agreed that defendants Sharkey and Charydczak would not testify before the Grand Jury about the 11/15/99 computer review and that defendants Mastrogiovanni and Donnatelli would keep hidden from the Grand Jury the results of both defendant Mastrogiovani's 11/7/99 computer review and defendant Charydczak's 11/15/99 computer review. Defendants Geist and Lamb maliciously agreed that defendant Geist would not testify before the Grand Jury and that defendants Villee, Donnatelli, and Mastogiovanni would keep hidden from the Grand Jury that defendants Geist and Donnatelli had allowed defendant Villee to alter a garbage bag of paper (before it was marked as evidence).

124. On 1/5/00 defendants Villee and F. Kunz testified to a Grand Jury, maliciously repeating some of the false statements that they made to police officers in 11/99 and making some statements that were inconsistent with what they told the police in 11/99. The defendants had knowledge that (for each

inconsistency), at worst, both their statement to the police and to the Grand Jury were false statements and, at best, one of them was a false statement.

125. To obtain indictments against Plaintiff Wiltz, defendant Villee made the following additional knowingly false claims, during his 1/5/00 Grand Jury testimony:

(a) The plaintiff's job duties were not going to be given to defendant C. L. Kuntz.

(b) The garbage bag that was recovered from a dumpster included all of PARSA's 1999 financial records and the records had been torn into little pieces.

(c) Auditors and consultants were helping to recreate financial documents and reports, all bank reconciliations, and other pieces of paper, because they had been destroyed by defendant Wiltz on 11/7/99. The auditor's costs were expected to eventually reach $10,000.

(d) In the presence of defendant Mastrogiovanni on 11/7/99, he looked at a computer screen which indicated that files had been accessed and emptied of their contents on 11/7/99.

126. To obtain indictments against Plaintiff Wiltz, defendant F. Kunz made the additional knowingly false claim (during his 1/5/00 Grand Jury testimony) that Plaintiff Wiltz had been involved in a previous "incident" during which she obtained access to PARSA premises, by squeezing her body through a locked gate.

127. On 1/5/00 defendants Mastrogiovanni and Donnatelli testified before a Grand Jury, repeating some of the statements that were contained in their police reports and making some

statements that were inconsistent with the reports. The defendants had knowledge that (for each inconsistency), at worst, both their report and their testimony was false and, at best, one of them was false.

128. To obtain indictments against Plaintiff Wiltz, defendant Mastrogiovanni made the following additional knowingly false claims, during his 1/5/00 Grand Jury testimony:

(a) Bank statements, or ledger papers, or paper records were missing from PARSA on 11/7/99 and he found this out on 11/7/99.

(b) Remnants of the bank statements/ledger papers/paper records that he learned on 11/7/99 were missing from PARSA were discovered in a dumpster.

(c) Many PARSA bank statements were torn up and located in garbage cans in Mountain View Park.

(d) On 11/7/99 R. Villee showed him a piece of a torn bank statement on the floor of PARSA's office and it later turned out that this piece of a bank statement was part of the records that were taken from PARSA, torn up, and located in trash cans in Mountain View Park.

(e) He looked at a PARSA computer screen on 11/7/99 and saw both that "files had been resaved as empty, more or less erasing all the data" and that "files had been modified on that morning".

129. To obtain indictments against Plaintiff Wiltz, defendant Donnatelli made the knowingly false claim (during his 1/5/00 Grand Jury testimony) that he and defendant Geist went to the

rear of the Middlesex Borough Police Headquarters (at a dumpster) on 11/8/99 and photographed things that had been taken out of PARSA's building, which included a blue gym bag that had been sitting by R. Villee's desk on 11/7/99, bank records, and "things of that nature".

130. In 2/00 defendants Villee, the staff of the Middlesex Borough Police Department, and the staff of the Middlesex County Office of the Prosecutor arranged for the plaintiff's second (completely unjustified) arrest, on the premises of another entity that defendant Villee was aware that the plaintiff performed services for. The reasons for the actions of the defendants were to intimidate the plaintiff, cause her to lose work, cause her to be subjected to public scorn, and cause her extreme emotional distress and humiliation. As a result of the actions of the defendants, the plaintiff's employment was terminated.

131. For the purpose of having a permanent public State record that maliciously destroyed the professional reputation of defendant Wiltz and that aided the criminal prosecution of her, in 2/00 defendants PARSA Board members, and Eccleston (and other agents of defendants R. D. Hunter and Hunter Group) supported defendant Villee's Board meeting presentation that included the following knowingly false representations: (a) The plaintiff destroyed all printed and computer copies of her own 9/30/99 financial statements. (b) The reason that defendant C. L. Kuntz had been able to prepare the 10/31/99 financial statements is that auditors had helped her to make "forced adjustments, to make

them come out right". (c) The plaintiff's 9/30/99 financial statements now needed to be "reconstructed" by defendant C. L. Kuntz.

132. Defendants PARSA, PARSA board members, R. D. Hunter, Hunter Group, and Eccleston acted negligently, in failing to correct the Board meeting statements of defendant Villee, despite knowledge that they were false.

133. At the request of defendants Villee and C. L. Kuntz, between 2/00 and 3/00 PARSA Board members approved the hiring of a software consultant (recommended by defendant C. L. Kuntz), to provide defendant C. L. Kuntz with training regarding the understanding of accounting principles and how to use an accounting software program and to provide PARSA with some new financial products. In furtherance of the conspiracy, it was falsely and maliciously represented in PARSA records and public-meeting records that the consultants were actually helping defendant C. L. Kuntz to "reconstruct" Plaintiff Wiltz's 9/30/99 financial statements and the general ledger.

134. In 3/00, the computer software consultant that had been hired performed the task of correcting the 10/99 journal entries that had been prepared by defendant C. L. Kuntz and accountant/auditor Bernard Mensah.

135. In furtherance of the conspiracy, between 11/99 and 3/00 defendants Villee and PARSA Board members paid defendant C. L. Kuntz approximately $18,000 for over 700 hours of work, under the knowingly false guise that she was "reconstructing" the plaintiff's 9/30/99 financial statements, bank reconciliations,

and other financial documents and that she was preparing financial records so that auditors could determine if the complainant had stolen any money from PARSA.

136. Some of the $18,000 paid to defendant C. L. Kuntz was for the time that she spent being instructed on the fundamentals of accounting.

137. PARSA Board members were aware that a reconstruction of financial statements and accounting records for a 9-month (year-to-date) period would only require an accountant approximately 90 hours of work.

138. In furtherance of the conspiracy, defendant Villee provided the Middlesex County Office of the Prosecutor with copies of the consultants' invoices and defendant C. L. Kuntz's paychecks, to support damages to PARSA that Plaintiff Wiltz had allegedly caused (and wished to be reimbursed for).

139. In 4/00 defendant C. L. Kuntz was given another raise, by defendant Villee and PARSA Board members.

140. After the plaintiff requested discovery from the Office of the Prosecutor, defendant Lamb denied the plaintiff due process (and willfully failed to perform his known obligation), by not turning over to the plaintiff all evidence that was exculpatory and favorable to her. He would not provide to the plaintiff with the documentation of the results of defendant Charydczak's 11/15/99 computer review. When the plaintiff visited the Office of the Prosecutor in (so that she could examine paper evidence), neither he nor any representative of the Middlesex County Office of the Prosecutor would allow the plaintiff to see (or know of

the existence of) a brown paper bag that contained paperwork, which was intended to be used as evidence during the trial.

141. Throughout the prosecution of the plaintiff, defendants Villee, Ruitenberg, and Carney represented that data that was in PARSA's computers was the only existing proof that there had been "reconstructions" of accounting documents and records.

142. On 2/20/03 Plaintiff Wiltz went to PARSA's office, for the pre-arranged purpose of obtaining discovery related to the computer theft charge and examining the financial files in the computer. Based upon the urgings and encouragement of defendants C. L. Kuntz and Villee, defendant DiNinno intimidated the plaintiff and shouted profanities at her, told her that she would not be allowed to complete her examination, and ordered her off of PARSA's premises. In refusing to allow the plaintiff to obtain discovery, the defendants denied the plaintiff due process and caused her extreme fear and emotional distress.

143. On 7/6/04 Plaintiff Wiltz went on trial for third degree burglary, using theft of a personnel file and of "paper" (that was in a garbage bag, that was in brown paper bag, and a 33-page Detailed General Ledger Trial Balance) as the justification for the charge.

144. In 7/04 defendants Villee and F. Kunz maliciously gave testimony to a jury that included some things that they had told a Grand Jury on 1/5/00 and some things that were inconsistent with what they had told the Grand Jury. The defendants had knowledge that (for each inconsistency), at worst, both their 1/00 and 7/04 testimony was false and, at best, one of them was

false. When asked to explain the reason for one of his inconsistencies, defendant Villee testified that he must have "misled" the Grand Jury.

145. In 7/04, defendant Villee gave the knowingly false testimony that the garbage bag that the prosecutor brought to court contained all of the 1999 financial records of PARSA and that it also contained what had been found in a dumpster on 11/8/99 by police officers.

146. In 7/04, defendant Mastrogiovani gave the knowingly false testimony that that the reason that fingerprints were not taken by the police of the 33-page Detailed General ledger trial Balance (that the prosecutor brought to the trial) was that it was believed that the document was something that C. Wiltz could have had a reason to touch during the course of her employment with PARSA.

147. On 7/9/04, the plaintiff was acquitted by a jury of the charge of third degree burglary.

148. On or around 8/23/04 the defendants voluntarily dismissed the charge of third degree computer theft against the plaintiff.

149. Throughout the prosecution of the plaintiff, defendants R. D. Hunter, Hunter Group, Eccleston, Maraziti, Carney, and Ruitenberg encouraged defendants Villee and PARSA Board members to initiate and continue the prosecution.

150. After the defendants conspired to insure that Plaintiff Wiltz was arrested and indicted for computer theft, the plaintiff was not tried for this charge. The defendants perverted the legal process and maliciously abused the proceedings, in that the

ulterior motives for the computer theft charge were to fraudulently obtain financial rewards (under the guise that work was being performed to correct 'computer theft' damage) and to insure that the plaintiff had long-term outstanding criminal charges against her and a permanent criminal record. As any reasonable person would know, the defendants knew that an accountant who was charged with the 'computer theft' of erasing an employer's computer accounting records could not work in the accounting profession and, consequently, could not maintain a CPA license. The intent of the defendants was to destroy the plaintiff's professional reputation and maliciously interfere with her "liberty" right to earn a living (because of her race).

151. The defendant used various improper/fraudulent means to attempt to recoup amounts paid to auditors/accountants, consultants, and defendant C. L. Kuntz. This included keeping the computer theft charge open for 5 years (even though there was no intent to adjudicate the charge), as a coercive means to persuade/compel the plaintiff to reimburse PARSA for the payments and/or to justify why an insurance company should make the reimbursement.

152. Defendants Villee and PARSA Board members maliciously abused the legal proceedings, by adopting a practice/custom (that had the effect of policy) of circulating verbal and written public statements about the indictment/charge for computer theft, without publicly revealing that there was no intent to adjudicate the charge. Because of the actions of the defendants, evidence of the plaintiff's arrest and indictment for computer theft was

also disseminated by the State of New Jersey to employers and potential employers of the plaintiff.

153. Defendant Kaplan was responsible for setting policies and procedures for the day-to-day operations of the Middlesex County Office of the Prosecutor.

154. Defendant Lamb and each successive Assistant Prosecutor who was assigned to the plaintiff's case were acting on the basis of a long-term practice/custom (that had the effect of policy) that had been established for the Middlesex County Office of the Prosecutor by (and under the direct supervision of) Prosecutor Glenn Berman and that was continued by (and under the direct supervision of) defendant Kaplan, when they abused the legal proceeding and would not dismiss charges against the plaintiff that they knew that there was no intent to adjudicate. As a result of the practice/custom/policy, the plaintiff was denied liberty and property, without due process of law.

155. The defendants intended to maliciously abuse the proceedings and cause injury to the plaintiff, in that they had evidence to prove that a computer theft did not take place on 11/7/99, deliberately hid that evidence from a Grand Jury, took actions to prevent the plaintiff from obtaining discovery regarding the computer theft charge, did not put the plaintiff on trial for computer theft, and only voluntarily dismissed the computer theft charge 5 years after the charge was made.

156. The malicious motives for all of the unconscionable actions of the defendants were to intentionally deny the plaintiff due process, equal protection of the laws, liberty, and property

(because of her race), to obtain the plaintiff's job for the Caucasian defendant who was not qualified for it, to cover-up and prevent the plaintiff from seeking redress for her unlawful (race-motivated) removal from her position, and to maliciously interference with the plaintiff's ability to earn a living (because of the plaintiff's race and the knowledge of her desire to seek redress for the race-motivated removal from her position). The defendants were also particularly incited by the false and bizarre claim made by defendants Villee and C. L. Kuntz, throughout the prosecution of the plaintiff, that the plaintiff was an African American who was "out to get" Caucasian C. L. Kuntz (and who had even allegedly behaved in a physically threatening manner with a pair of scissors).

157. An additional malicious motive for the unconscionable actions of defendants R. D. Hunter, Hunter Group, Maraziti, Eccleston, Carney, Ruitenberg, and F. Kuntz, was to fraudulently obtain financial rewards. The fact that they did not take actions to support/advise/urge/encourage defendants Villee, PARSA, and PARSA Board members to prosecute Caucasian Treasurers/accountants (that defendant Villee had made charges against) is also evidence that the primary motive for their actions was the plaintiff's race.

158. An additional malicious motive for the unconscionable actions of defendants R. D. Hunter, Hunter Group, and Eccleston was to hide the extreme technical incompetence of employee Bernard Mensah.

159. Additional malicious motives for the unconscionable actions

of defendant C. L. Kuntz were to fraudulently obtain extraordinary financial rewards and to obtain an extremely accelerated accounting education (paid for by PARSA).

160. The defendants did not act in good faith, acted maliciously, acted unlawfully, acted with the intent to deny the plaintiff her constitutional and civil rights, and (in some instances) acted with a reckless disregard for the plaintiff's rights.

161. The defendants knowingly and arbitrarily (because of the plaintiff' race) disregarded laws, failed to perform many aspects of their sworn duties, and engaged in willful prosecutorial misconduct (outside and beyond the scope of their legal authority).

162. As a direct result of the prosecution of Plaintiff Wiltz and the public statements (and records of the prosecution) that were made/circulated by defendants about her, the plaintiff lost employment and employment opportunities. Plaintiff Wiltz could obtain other work to replace the work that she lost, because of the on-going prosecution of her and the resulting existence of a permanent criminal record.

163. Past and potential employers have expressed to the plaintiff that they will not employ an accountant who has been charged with (and/or tried for) burglary and/or theft.

164. In 12/01 Plaintiff Wiltz lost her license to practice public accountancy, because of the inability to work (due to the malicious prosecution of her and the existence of a permanent criminal record).

165. In furtherance of the conspiracy, on or around 4/10/05, defendants Koch and Villee maliciously provided the Presbyterian Church in Westfield (NJ) with false verbal statements and written documents (on behalf of PARSA and its Board members) that were consistent with the statements and documents that the defendants made/used during the prosecution of the plaintiff, in a successful attempt to prevent the organization from hiring the plaintiff.

166. As a direct result of the actions of the defendants, the plaintiff suffered for over 5 years (and continues to suffer) extreme humiliation/shame/embarrassment, severe emotional distress/pain/trauma, physical ailments resulting from the emotional distress/pain/trauma (which sometimes required emergency hospitalization), required (likely permanent) medication and psychological therapy, loss of license to practice as a Certified Public Accountant, lost income and employment, the stigmatization of having a permanent criminal record, permanent loss of ability to work in her profession and to earn a living, permanent loss of her reputation in the community, and permanent loss of her professional reputation.

167. Under the provisions of the applicable state and federal laws, the plaintiff demands judgment against the defendants (jointly and severally) of

(a) compensation for back pay,

(b) compensation for front pay,

(c) punitive damages,

(d) compensation for value of license to practice as a Certified

Public Accountant,

(e) interest,

(f) compensation for costs of lawsuit,

(g) compensation for costs of past and future medical therapy,

(h) compensation for pain, suffering, emotional distress, and economic disruptions,

(i) the imposition of criminal and civil fines and punishments against defendants, for violations of the laws and regulations of the Borough of Middlesex and the State of New Jersey (including, but not limited to, for perjury/false swearing, obstruction of justice, falsification of records, and other official misconduct),

(j) injunctive relief, to expunge all arrest and prosecution records, and

(k) such other and further relief as the Court deems just and proper.

SECOND COUNT

1. The complainant repeats and realleges the allegations as contained in the first count of the complaint, as if fully set forth herein at length.

2. Defendants Middlesex County Office of the Prosecutor, Lamb, Charydczak, Kaplan, DiNinno, Middlesex Borough Police Department, Mastrogiovanni, Donnatelli, Geist, Sharkey, Benson, PARSA, Villee, PARSA Board members, Eccleston, R. D. Hunter, Hunter Group, Maraziti, Ruitenberg, and Carney acted negligently, in maliciously prosecuting the plaintiff and maliciously abusing the legal proceedings.

3. The actions of the defendants violated the laws and constitutions of the State of New Jersey and the United States.

4. As a direct result of the actions of the defendants, the plaintiff suffered for over 5 years (and continues to suffer) extreme humiliation/shame/embarrassment, severe emotional distress/pain/trauma, physical ailments resulting from the emotional distress/pain/trauma (which sometimes required emergency hospitalization), required (likely permanent) medication and psychological therapy, loss of license to practice as a Certified Public Accountant, lost income and employment, the stigmatization of having a permanent criminal record, permanent loss of ability to work in her profession and to earn a living, permanent loss of her reputation in the community, and permanent loss of her professional reputation.

5. Under the provisions of the applicable state and federal laws, the plaintiff demands judgment against the defendants (jointly and severally) of

(a) compensation for back pay,

(b) compensation for front pay,

(c) punitive damages,

(d) compensation for value of license to practice as a Certified Public Accountant,

(e) interest,

(f) compensation for costs of lawsuit,

(g) compensation for costs of past and future medical therapy,

(h) compensation for pain, suffering, emotional distress, and economic disruptions,

(i) the imposition of criminal and civil fines and punishments against defendants, for violations of the laws and regulations of the Borough of Middlesex and the State of New Jersey (including, but not limited to, for perjury/false swearing, obstruction of justice, falsification of records, and other official misconduct),

(j) injunctive relief, to expunge all arrest and prosecution records, and

(k) such other and further relief as the Court deems just and proper.

THIRD COUNT

1. The complainant repeats and realleges the allegations as contained in the first and second counts of the complaint, as if fully set forth herein at length.

2. From 11/99 to 4/05 defendants Middlesex County Office of the Prosecutor, Lamb, Charydczak, Kaplan, DiNinno, Middlesex Borough Police Department, Mastrogiovanni, Donnatelli, Geist, Sharkey, Benson, PARSA, Villee, F. Kunz, C. L. Kuntz, PARSA Board members, Eccleston, R. D. Hunter, Hunter Group, Maraziti, Ruitenberg, and Carney conspired to maliciously prosecute the plaintiff, to maliciously abuse the legal proceedings, to deny the plaintiff due process in other ways, to maliciously deny the plaintiff her position of employment and interfere with her ability to earn a living, and to impede/hinder/obstruct the due course of justice, with the intent to deny the plaintiff equal protection of the laws.

3. The actions of the defendants violated the laws and

Constitution of the State of New Jersey, U. S. Const.Amend. 4, U. S. Const.Amend. 14, and 42 U.S.C.A. sections 1985(2) and 1985(3).

4. As part of the malicious prosecution of the plaintiff, the defendants conspired to engage in a malicious campaign to alter documents (before marking them as evidence), to conceal the fact of the alteration from a Grand Jury and a jury, to commit perjury/false swearing and encourage others to do the same, to falsify official documents, to knowingly provide (and assist others in providing) false statements and information to prosecutors and a Grand Jury, to refuse to properly conduct a criminal investigation, to make false statements (and affirm the known false statements of others) to law enforcement officers, to intimidate and frighten the plaintiff, to deliberately turn a blind eye to improper acts of subordinates, to conceal facts/evidence/results of an investigation, and to impede, hinder, and obstruct the due course of justice in other ways.

5. Each defendant had knowledge of the conspiracy and willfully agreed to enter into it.

6. Each of the defendants engaged in overt acts, in furtherance of the conspiracy.

7. The defendants acted maliciously and with the intent to deny the plaintiff her constitutional rights.

8. The actions of the defendants were because of the plaintiff's race.

9. As a direct result of the actions of the defendants, the plaintiff suffered for over 5 years (and continues to suffer) extreme humiliation,/shame/embarrassment, severe emotional

distress/pain/trauma, physical ailments resulting from the emotional distress/pain/trauma (which sometimes required emergency hospitalization), required (likely permanent) medication and therapy, loss of license to practice as a Certified Public Accountant, lost income and employment, the stigmatization of having a permanent criminal record, permanent loss of ability to work in her profession and to earn a living, permanent loss of her reputation in the community, and permanent loss of her professional reputation.

10. Under the provisions of the applicable state and federal laws, the plaintiff demands judgment against the defendants (jointly and severally) of

(a) compensation for back pay,

(b) compensation for front pay,

(c) punitive damages,

(d) compensation for value of license to practice as a Certified Public Accountant,

(e) interest,

(f) compensation for costs of lawsuit,

(g) compensation for costs of past and future medical therapy,

(h) compensation for pain, suffering, emotional distress, and economic disruptions,

(i) the imposition of criminal and civil fines and punishments against defendants, for violations of the laws and regulations of the Borough of Middlesex and the State of New Jersey (including, but not limited to, for perjury/false swearing, obstruction of justice, falsification of records,

and other official misconduct),

(j) injunctive relief, to expunge all arrest and prosecution records, and

(k) such other and further relief as the Court deems just and proper.

FOURTH COUNT

1. The complainant repeats and realleges the allegations as contained in the first, second, and third counts of the complaint, as if fully set forth herein at length.

2. At all times during the prosecution of the plaintiff, defendants Benson, PARSA Board members, Maraziti, Ruitenberg, and Carney were aware of what was taking place regarding the prosecution and had the ability/authority to stop the prosecution and/or aid in preventing it.

3. In 7/04, the other defendants were aware of the intents of defendants Villee, F. Kuntz, and Mastrogiovanni to conspire against the plaintiff, to testify against the plaintiff, and to maliciously attempt to convince a jury to convict the plaintiff of burglary and theft.

4. The defendants took no actions to stop the prosecution, to stop the 7/04 testimonies, or to aid in preventing the prosecution/testimonies.

5. The actions of the defendants violated 42 U.S.C.A. section 1986.

6. As a direct result of the actions of the defendants, the plaintiff was denied her constitutional and civil rights and suffered the damages that are detailed in the first through third

counts of the complaint.

7. Under the provisions of the applicable state and federal laws, the plaintiff demands judgment against the defendants (jointly and severally) of

(a) compensation for back pay,

(b) compensation for front pay,

(c) punitive damages,

(d) compensation for value of license to practice as a Certified Public Accountant,

(e) interest,

(f) compensation for costs of lawsuit,

(g) compensation for costs of past and future medical therapy,

(h) compensation for pain, suffering, emotional distress, and economic disruptions,

(i) the imposition of criminal and civil fines and punishments against defendants, for violations of the laws and regulations of the Borough of Middlesex and the State of New Jersey (including, but not limited to, for perjury/false swearing, obstruction of justice, falsification of records, and other official misconduct),

(j) injunctive relief, to expunge all arrest and prosecution records, and

(k) such other and further relief as the Court deems just and proper.

by ______________________
Cassandra Wiltz
Plaintiff, Pro Se

Dated: July 6, 2005

JURY DEMAND

Plaintiff demands a jury trial on all issues.

by Cassandra Wiltz
Cassandra Wiltz

Plaintiff, Pro Se

Dated: July 6, 2005

CERTIFICATION

I, Cassandra Wiltz, of full age, hereby certifies as follows:

1. I am representing myself as a pro se litigant in this case.

2. To the best of my knowledge, information, and belief, the matter involved here is not the subject of any other action pending in any other court and it is not the subject of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated.

3. I know of no other party who should be joined in this action, who has not already been joined.

4. I certify that the within statements made by me are true. I am aware that if any of the foregoing statements made by me are

willfully false, I am subject to punishment.

by Cassandra Wiltz

Cassandra Wiltz

Plaintiff, Pro Se

Dated: July 6, 2005